Lee A. MOSCO, Jr., Plaintiff-Appellant,

v.

BALTIMORE & OHIO RAILROAD, Defendant-Appellee.

No. 86–2037.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1987.

Decided April 21, 1987.

Lawrence A. Katz (Joseph A. Coffey, Jr., Bala Cynwyd, Pa., on brief), for plaintiff-appellant.

Ranson J. Davis (H. Russell Smouse, Nancy S. Allen, C. Keith Meiser, Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., Baltimore, Md., on brief), for defendant-appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Circuit Judge:

Plaintiff Lee A. Mosco, Jr., appeals from a judgment entered in favor of defendant Baltimore & Ohio Railroad ("B & O") in this case involving claims under the Federal Boiler Inspection Act, 45 U.S.C. § 23 (1982), and the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.* (1982). Although we do not entirely agree with the reasoning of the district court, we affirm the judgment for the B & O for the reasons stated below.

Mosco was employed by the B & O as a locomotive engineer. He was injured when a rock, or some similar object, came through the open window of the locomotive he was operating and struck him in the head. Although the windows of the locomotive were made of shatter-proof material, they were not equipped with any protective screens, bars, grates or similar devices.

At the time the injury occurred, Mosco was approaching the Virginia Avenue Tun-

nel in Washington, D.C. He testified that he had been stoned by juveniles in this area on a number of occasions, and that he had reported these stoning incidents to the B & O. He further stated that on the day of the accident, he was operating the locomotive with its right window two to three inches open, in order to cool and ventilate the cab of the locomotive. As he approached the Virginia Avenue Tunnel, Mosco opened the window further to a width of about eight inches. He testified that it was necessary for him to open the window to check his ground speed, because the window was so dirty that he could not otherwise see out.

Before trial began, the B & O made a motion in limine to preclude Mosco from offering any evidence concerning the absence of screens, bars, grates or similar devices from the windows of the locomotive's cab, and to prevent Mosco from contending that the absence of such protective devices constituted a violation of the Boiler Inspection Act. The district court granted this motion and, at the close of Mosco's case, directed a verdict for the B & O on the Boiler Inspection Act claim. Mosco's FELA claim went to the jury, and the jury returned a verdict for the B & O.

Although Mosco makes numerous assignments of error, his primary contention is that the district court erred in granting the B & O's motion in limine and in later directing a verdict for the B & O on the Boiler Inspection Act claim. In our view, the district court acted properly in granting the B & O's motions in limine and for directed verdict, although we reach this conclusion for different reasons than those relied upon by the district court.

The Boiler Inspection Act prohibits common carriers by railroad from operating any locomotive unless the "locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb...." 45 U.S.C. § 23. The Act also prohibits the operation of any locomotive

that has not passed certain tests and inspections prescribed in the applicable rules and regulations. *Id.* The Federal Railroad Administration has promulgated regulations concerning locomotive safety standards and inspections. *See* 49 C.F.R. §§ 200 *et seq.* (1986).

The Boiler Inspection Act imposes upon carriers by railroad an absolute duty to maintain their locomotives in safe and proper condition. *Lilly v. Grand Trunk Western Railroad Co.*, 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411 (1943). Carriers that violate the Act may be held liable to employees who are injured as a result of the violation. *See, e.g., Lilly*, 317 U.S. at 485, 63 S.Ct. at 350; *Green v. River Terminal Railway Co.*, 763 F.2d 805, 810 (6th Cir.1985).

In this case, the essence of Mosco's Boiler Inspection Act claim was that the locomotive in which he was injured was not safe to operate without screens, bars, grates or similar protective devices over the windows of the locomotive's cab. Mosco claimed that such protective devices were necessary to make the locomotive safe, because it was often necessary to operate the locomotive with its windows open.

We believe that the district court incorrectly apprehended the nature of the duty imposed by the Boiler Inspection Act in granting the B & O's motion in limine. The district court was of the opinion that a carrier cannot violate the Act so long as it complies with the applicable safety and inspection regulations promulgated by the Federal Railroad Administration. As the district court correctly noted, the B & O had complied with the regulation requiring safety glazing of locomotive cab windows. *See* 49 C.F.R. § 223. The district court believed that the B & O's compliance with this regulation satisfied its duty under the Boiler Inspection Act. Accordingly, the district court excluded the evidence concerning the absence of screens, bars, grates or similar protective devices from the cab windows that Mosco intended to offer to prove a violation of the Boiler Inspection Act.

■ We disagree with the district court's rationale for granting the B & O's motion in limine. As other courts have observed, a carrier may violate the Boiler Inspection Act in one of two ways. First, it may fail to comply with the regulations promulgated by the Federal Railroad Administration. Compliance with these regulations is not, however, the only duty imposed by the Act. The Act also imposes a broader duty on carriers to keep all the parts and appurtenances of their locomotives in proper condition and safe to operate without unnecessary peril to life or limb. Thus, even if a carrier complies with the regulations, it may still violate the Act if the parts or appurtenances of its locomotives are otherwise unsafe. Contrary to the district court's view, "[t]he argument that there can be no violation of the Act absent a violation of some regulation or order of the ... Federal Railroad Administration is without merit." *Herold v. Burlington Northern, Inc.,* 761 F.2d 1241, 1246 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). *Accord Whelan v. Penn Central Co.,* 503 F.2d 886, 890 (2d Cir.1974); *St. Louis Southwestern Railway Co. v. Williams,* 397 F.2d 147, 149–51 (5th Cir.1968); *Calabritto v. New York, New Haven & Hartford Railroad Co.,* 287 F.2d 394, 396 (2d Cir.), *cert. denied,* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961).

This is not to say, however, that liability under the Boiler Inspection Act may be imposed in every case in which it is alleged that a carrier's failure to install some device on a locomotive rendered the locomotive unsafe. The Act imposes on carriers only the duty to maintain the parts and appurtenances of their locomotives in safe and proper condition, and the term "parts and appurtenances" does not include every item of equipment that conceivably could be installed on a locomotive. Rather, as the Supreme Court has stated:

> Whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission [now the Federal Railroad Administration], are within the [Boiler Inspection Act]. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not. These have not been excluded from the usual rules relative to liability.

*Southern Railway Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936); *see also Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149, 1152 (9th Cir.1983) (*Lunsford* interpreted "parts and appurtenances" "as encompassing '[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary] ...'") (emphasis deleted).

■ From *Lunsford,* we derive the rule that a carrier cannot be held liable under the Boiler Inspection Act for failure to install equipment on a locomotive unless the omitted equipment (1) is required by applicable federal regulations; or (2) constitutes an integral or essential part of a completed locomotive. In this case, the bars, screens, grates or similar protective devices, which Mosco claims should have been installed over the windows of the locomotive's cab, are not required by applicable federal regulations. Thus, under the rule we have stated, Mosco would have a viable claim under the Boiler Inspection Act only if the omitted protective devices constitute an integral or essential part of a completed locomotive. In our opinion, they do not. *Cf. Lunsford,* 297 U.S. at 399–402, 56 S.Ct. at 505–06 (experimental safety braking device was not integral or essential part of a completed locomotive).

■ Because the B & O's failure to install protective devices over the windows of the locomotive in which Mosco was injured did not amount to a failure to maintain the parts and appurtenances of the locomotive in safe and proper condition under the Boiler Inspection Act, we believe that the district court correctly excluded evidence concerning the absence of such protective devices as irrelevant. Mosco contends, however, that even if the exclusion of this evidence was proper, the district court nonetheless erred in directing a

verdict for the B & O on the Boiler Inspection Act claim. We disagree.

Mosco testified that on the day his injury occurred, the windows of the locomotive's cab were so dirty that he had to open them to see out. He also testified that unless the windows were kept open, the interior of the cab became unbearably hot and inadequately ventilated. Mosco contends that this evidence was sufficient to withstand the B & O's motion for directed verdict, because the dirtiness of the windows and the inadequate ventilation violated federal regulations promulgated under the Boiler Inspection Act. The pertinent regulations provide that "[c]ab windows of the lead locomotive shall provide an undistorted view of the right-of-way for the crew from their normal position in the cab" and "[t]he cab shall be provided with proper ventilation...." 49 C.F.R. § 229.119(b) and (d).

We find Mosco's arguments unpersuasive. There is no suggestion that the cab windows would have provided inadequate visibility if they had been clean. Mosco testified that on the day he was injured, he inspected the locomotive before beginning work but did not clean the windows. He further indicated that on some occasions, he did clean the windows if they were extremely dirty. Thus, it appeared from Mosco's own testimony that any impaired visibility resulting from dirt on the windows was due to his own failure to clean the windows, and not to any failure of the B & O to maintain the parts and appurtenances of the locomotive in safe and proper condition as required by the Boiler Inspection Act.

Mosco's argument concerning inadequate ventilation of the locomotive's cab is similarly without merit. Mosco's testimony indicated that ventilation in the cab was adequate if the windows were left open. There was, however, as he points out, no way to prevent objects from entering the open windows of the cab. We fail to see how this state of affairs violates the requirement that carriers provide their locomotive cabs with adequate ventilation. In our view, Mosco's argument on this point is merely a restatement of his claim that the cab windows should have been equipped with protective devices. For the reasons discussed above, this claim does not constitute a viable cause of action under the Boiler Inspection Act.

Because the district court properly excluded evidence concerning the absence of bars, grates, screens or similar protective devices from the windows of the locomotive's cab, the B & O was entitled to a directed verdict on Mosco's Boiler Inspection Act claim. The evidence of dirty windows and purportedly inadequate ventilation, which was admitted, was not substantial enough to support a verdict in favor of Mosco on the Boiler Inspection Act claim. Because reasonable jurors could not have returned a verdict for Mosco, the district court properly directed a verdict for the B & O on this claim. *See, e.g., Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1285 (4th Cir.1985) (test for directed verdict is whether there can be only one conclusion as to verdict that reasonable jurors could reach; unless there is substantial evidence upon which jury could properly return verdict for nonmoving party, motion for directed verdict must be granted).

Although Mosco had no viable Boiler Inspection Act claim based on the absence of protective devices from the windows of the locomotive's cab, it is possible that he might have stated a meritorious FELA claim based on the same facts. As the Supreme Court has indicated, devices or equipment that do not fall within the coverage of the Boiler Inspection Act are not therefore excluded from the usual rules of liability. *Lunsford,* 297 U.S. at 402, 56 S.Ct. at 506. If the jury had found that the B & O was negligent in failing to install protective devices over the cab windows, it could have returned a verdict for Mosco based on breach of the B & O's duty of reasonable care under the FELA.

Mosco, however, never offered any evidence concerning the absence of protective devices from the cab windows to prove breach of the B & O's duty of care under the FELA. In response to our questioning at oral argument, Mosco's counsel stated

that he believed that the district court's ruling on the motion in limine had precluded him from introducing this evidence for any reason, including proving negligence of the B & O under the FELA. We note, however, that the B & O's motion in limine was directed only to the exclusion of evidence concerning the absence of protective devices for purposes of Mosco's Boiler Inspection Act claim. Mosco never asked the district court whether its ruling on the motion in limine extended to his FELA claim as well, and he never made a proffer concerning the absence of protective devices to prove a FELA violation. It was not until oral argument before this court that Mosco first made the claim that the district court had improperly excluded evidence concerning the absence of protective devices from the cab windows for purposes of his FELA claim.

■ Under these circumstances, we find no reversible error in the district court's grant of the motion in limine. It appears to us that Mosco simply failed to ascertain the scope of the district court's ruling and thereafter failed to offer evidence that might have enabled him to prevail on a negligence theory under the FELA. Mosco's failure to bring the error he now asserts to the attention of the trial court precludes us from granting him relief on this ground, since any error that was committed below was not plain error.

Mosco's remaining assignments of error require little discussion. Mosco's primary claim under the FELA was that the B & O had breached its duty to provide him a safe place to work by failing to take precautions against the activities of the rock-throwing juveniles who, according to Mosco, congregated at the Virginia Avenue Tunnel. The district court correctly instructed the jury that the B & O had a nondelegable duty under the FELA to provide Mosco a safe place to work, even when Mosco's duties required him to go onto property owned by a third person, such as the property surrounding the Virginia Avenue Tunnel. *See Cazad v. Chesapeake & Ohio Railway Co.,* 622 F.2d 72, 75 (4th Cir.1980). The district court further instructed the jury that a carrier may be held liable under the FELA if a dangerous condition on a third person's property causes injury to an employee of the carrier, so long as the dangerous condition was foreseeable to the carrier.

■ In our opinion, these instructions adequately informed the jury of the duty imposed on the B & O by the FELA. Mosco, however, contends that the district court erred in failing to instruct the jury that the B & O had a duty to inspect the premises surrounding the Virginia Avenue Tunnel for the purpose of discovering the juveniles who, according to Mosco, customarily stoned passing trains. In cases in which property defects on premises owned by a third person have caused injury to a railroad employee, we have held that the railroad has a duty to inspect the premises and protect its employees from possible danger. *See, e.g., Cazad,* 622 F.2d at 75. However, Mosco has cited no authority, and we have found none, holding that the FELA imposes a duty on railroad employers to inspect premises owned by a third person for the purpose of detecting the intentional criminal activity of trespassers that may occur there. We are unwilling to hold that the B & O had such a duty in this case, and, accordingly, we conclude that the district court did not err in declining to give the jury an instruction to that effect.

■ Mosco's final argument is that the district court committed prejudicial error in questioning him on two occasions during the trial. On the first occasion, the district court questioned Mosco about a statement he had given to a claims agent for the B & O after his injury. This interrogation, which elicited nothing more than the same answers that Mosco had previously given on cross-examination, was not prejudicial to Mosco.

On the second occasion, the district court questioned Mosco about the renewal of his driver's license as it related to his claim of impaired vision resulting from the head injury he had suffered. Mosco previously had testified that his driver's license had not become due for renewal for a period of two and one-half years, although, as the district court noted, applicable state law

requires renewal of driver's licenses every two years. Because Mosco's testimony on this point was confusing and likely erroneous, the district court acted properly in questioning him to obtain clarification. *See, e.g., United States v. Parodi*, 703 F.2d 768, 775 (4th Cir.1983) (district court has duty to see that facts are properly developed at trial).

For the reasons stated in this opinion, the judgment of the district court is affirmed.

AFFIRMED.