Lester D. KING, Plaintiff–Appellant,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY,
Defendant–Appellee.

No. 85–1666.

United States Court of Appeals,
Tenth Circuit.

Sept. 2, 1988.

Siegfried Hesse, Berkeley, Cal. (E. Elizabeth Summers, Berkeley, Cal., of counsel, and Frederick L. Nelson, Hildebrand, McLeod & Nelson, Oakland, Cal. and Arturo G. Ortega, Ortega & Snead, Albuquerque, N.M., were also on the brief), for plaintiff-appellant.

Booker Kelly, White, Koch, Kelly & McCarthy, P.A., Santa Fe, N.M. (Larry White, White, Koch, Kelly & McCarthy, P.A., Santa Fe, N.M., was also on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiff Lester King is a railroad brakeman for defendant Southern Pacific Transportation Co. (SP). King filed this action against SP under the Federal Employer's Liability Act, 45 U.S.C. § 51–60 (FELA), the Boiler Inspection Act, 45 U.S.C. § 22–34 (BIA), and the Safety Appliance Act, 45 U.S.C. § 1–16 (SAA).

King claims he suffered work-related injuries in two separate accidents, one in 1980 and one in 1984. As to the 1980 accident, King claims the locomotive seat in which he rode violated the BIA because it lacked armrests. Regarding the 1984 accident, King claims that SP violated the SAA because its train on which he was riding made a sudden and unexpected emergency stop, which King claims to have resulted from defective brakes on one of the railroad cars. He claims these alleged defects caused or contributed to his injuries.

The district court granted summary judgment for SP on King's BIA claim regarding the 1980 accident asserted in the original complaint (Count II), and a jury returned a verdict for SP on King's FELA and other claims (Count I of original complaint and other counts of the amended complaint). King appeals from the adverse judgments. We affirm.

## I

### The 1980 Grade Crossing Collision

On July 27, 1980, King was acting as head brakeman on a coal train operated by SP between Lordsburg, New Mexico, and El Paso, Texas. The train was operating on SP tracks with an SP crew. King was sitting in the brakeman's chair behind the engineer in the lead locomotive, which belonged to the Santa Fe. Under its contract with the union SP was required to provide locomotive brakemen's seats with armrests. However, King's seat in the Santa Fe locomotive lacked armrests.

En route the SP train collided with a cattle truck at a grade crossing. The crew saw the truck move onto the crossing, and King dropped to the floor of the locomotive. The engineer also dropped to the floor after throwing the train into emergency. King alleges that in the ensuing impact, he struck his neck and shoulder on an iron bar and twisted his back, 'popping' it. King was off work for two months but did not seek medical treatment until the fall of 1981. In 1983 King filed this action against SP under the BIA and the FELA for these injuries, claiming the locomotive was 'unsafe' because the brakeman's seat lacked seatbelts and armrests for him to hold.

### The 1984 Emergency Stop

On January 1, 1984, after this suit was filed concerning the 1980 accident, King was involved in another accident while working as rear brakeman in the caboose of an SP train. The train approached a red stop signal and the engineer, intending to slow the train, applied a low level of air to the train's air brake line. However, instead of gradually slowing down, the train

went into a sudden full emergency stop. This reaction is typically caused by a car with defective brakes (known as a "dynamiter" in railroad jargon) somewhere on the train. King claims the sudden impact threw him against the wall of the caboose, injuring his left forearm, neck and back. He was off work for four months after the accident.

King did not attempt to file a supplemental complaint for the 1984 accident until after the court entered a summary judgment for SP with respect to the 1980 grade crossing collision claims. However, the court allowed King to file a supplemental complaint against SP under the FELA and the SAA for the injuries that allegedly resulted from the 1984 emergency stop.

## II

### The District Court's Rulings

A motion for summary judgment was filed by SP as to both Count I, the FELA claim, and as to Count II, the BIA claim, of the complaint concerning the 1980 grade crossing collision. After review of the motion and King's response, the depositions and materials submitted, the court entered a Memorandum Opinion and Order granting summary judgment for SP as to Count II and denying the motion as to Count I.

The district judge summarized the plaintiff's BIA claim. King contended he would not have suffered the injuries if armrests and a seatbelt had been present on the chair in which he was riding, and King claimed the lack of these devices made the chair unsafe within the meaning of the BIA. King argued that a genuine issue of fact existed whether the locomotive could be operated in a safe condition without such equipment. The court pointed out that SP argued that under applicable safety standards, the only requirement concerning engine seats was that they "be securely mounted and braced." 49 C.F.R. § 229.119 (1980). Since the seat met this requirement, SP contended there was no violation of the BIA and that neither armrests nor seatbelts were parts or appurtenances of the engine in which King was riding so that the BIA was inapplicable.

The court referred to deposition testimony that SP uniformly provides armrests on its locomotives chairs (King deposition at 92) and SP was supposed to provide armrests on brakemen's chairs under its collective bargaining agreement. (See Pl.Exh. 38, p. 76, Sec. D, ¶ 3; King deposition at 90–95; Hanson deposition at 8–9). The contractual agreement since 1938 has required armrests in SP engines. (Hansen deposition at 8).

The district court held that the fact that SP had undertaken to provide armrests on brakemen's chairs in its own engines and had experimented with use of seatbelts on chairs did not establish that engine chairs without such devices are unsafe to operate, nor that they create "unnecessary peril to life or limb" under the BIA. The Secretary of Transportation, who was authorized to promulgate safety rules and regulations, had specifically addressed the subject of chairs in locomotives and had not seen fit to prescribe armrests as necessary to safe operation of locomotives. The court cited Southern Ry. v. Lunsford, 297 U.S. 398, 401–02, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936), and its statements that parts or attachments prescribed by order of the Interstate Commerce Commission are within the BIA, but that mere experimental devices that do not increase the peril but may prove helpful in an emergency, are not. Since the Secretary had addressed cab seats in 49 C.F.R. § 229.119 (1980) and had determined only that they must be securely mounted and braced, and the plaintiff did not allege otherwise, the SP motion for summary judgment on the BIA claim was granted.

With respect to the FELA claim sounding in negligence, the court found that there were material issues of fact and denied summary judgment. A fact question was held to exist whether it was reasonably foreseeable that in the absence of armrests, harm was possible. As to the negligence claim under the FELA, the court found a fact question existed whether SP acted reasonably in allowing an engine on its line that was not equipped with armrests on locomotive chairs, in light of

SP's having provided armrests for over 40 years and brakemen's demands for them.

After ruling on SP's motion for summary judgment, the court allowed King to file a supplemental complaint against SP asserting claims under the FELA and the Safety Appliance Act for injuries that allegedly resulted from the 1984 emergency stop. These claims were tried with King's surviving FELA claim arising from the 1980 grade crossing collision. At trial, King abandoned his theory that SP was liable for failing to provide seatbelts, and he only argued that SP was liable for failing to provide armrests and for failing to operate its train in a careful and prudent manner at the time of the 1984 accident.

At the close of all the evidence, King moved for a directed verdict on his claims arising from the 1984 accident. VIII R. at 957. The district court denied this motion and the jury returned a general verdict for SP. King appeals from the adverse judgments.

### III

#### King's Claims of Error

On appeal, King asserts two main claims of error. First, he says the district court improperly granted summary judgment for SP on his BIA claim arising from the 1980 grade crossing collision, arguing that his locomotive seat was "unsafe" under the BIA even though it met federal regulations. Second, he claims that the district court should have directed a verdict in his favor on his SAA claim arising from the 1984 emergency stop, because there was no evidence to support a verdict in SP's favor. King does not raise any question on appeal about his FELA claims.

### A.

#### The Boiler Inspection Act and Failure to Provide Armrests

■ The Boiler Inspection Act prohibits railroads from operating any locomotive unless the "locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb...." 45 U.S.C. § 23. The BIA also prohibits the operation of any locomotive that has not passed certain tests and inspections prescribed in the pertinent rules and regulations. *Id.*[1] Under the BIA the Supreme Court has held that "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of [the Secretary], are within the statute." *Southern Ry. v. Lunsford*, 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936). In light of *Lunsford*, a carrier cannot be held liable under the BIA for failure to install equipment on a locomotive unless the omitted equipment (1) is required by

---

1. The BIA and the SAA are regarded as amendments to the FELA. *Urie v. Thompson*, 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949). The BIA supplements the FELA to provide additional public protection and facilitate employee recovery. *Id.* at 189, 191, 69 S.Ct. at 1034, 1035; *see Garcia v. Burlington N.R.R.*, 818 F.2d 713, 715 (10th Cir.1987). The BIA is to be considered together with other federal railroad safety laws, and is to be construed liberally to carry out their remedial and humanitarian purposes. *Southern Ry. v. Bryan*, 375 F.2d 155, 158 (5th Cir.), *cert. denied*, 389 U.S. 827, 88 S.Ct. 82, 19 L.Ed.2d 83 (1967).

The FELA and the BIA further their humanitarian goals by imposing different types of liability. Liability under the FELA is premised on the railroad's negligence, however small. 45 U.S.C. § 51; *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 508–09, 77 S.Ct. 443, 449–50, 1 L.Ed.2d

493 (1957). In contrast, the BIA imposes on the carrier an absolute duty to maintain the locomotive, and all its parts and appurtenances, in proper condition, and safe to operate without unnecessary peril to life or limb. *Lilly v. Grand Trunk W.R.R.*, 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411 (1943). The FELA allows recovery in a broad range of situations, while liability under the BIA only occurs under narrow circumstances. As a result, claims which cannot be maintained under the BIA are often actionable under the FELA. *See, e.g., Garcia*, 818 F.2d at 720; *McKenna v. Washington Metro. Area Transit Auth.*, 829 F.2d 186, 188 (D.C.Cir. 1987); *Mosco v. Baltimore & O.R.R.*, 817 F.2d 1088, 1092 (4th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *Steer v. Burlington N., Inc.*, 720 F.2d 975, 976–77 (8th Cir.1983).

federal regulations of the Secretary,[2] or (2) constitutes an integral or essential part of a completed locomotive. *Mosco v. Baltimore & O.R.R.*, 817 F.2d 1088, 1091 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *see Marshall v. Burlington N., Inc.*, 720 F.2d 1149, 1152 (9th Cir.1983).

■ King does not claim that the locomotive seat failed to satisfy the only pertinent federal regulation, which required that "[c]ab seats shall be securely mounted and braced." 49 C.F.R. § 229.119(a) (1980). Instead, King argues the chair was "unsafe" because it lacked armrests. We must therefore consider whether a locomotive chair can be "unsafe" under the BIA if it conforms to pertinent regulations, but lacks additional safety features.

King correctly asserts that a locomotive or its parts and appurtenances might satisfy federal regulations and still be "unsafe" under the BIA. *See Mosco,* 817 F.2d at 1091; *Bolan v. Lehigh Valley R.R.,* 167 F.2d 934, 936 (2d Cir., 1948). That occurs when the railroad fails to maintain the locomotive or its parts and appurtenances so

that the locomotive cannot be operated without unnecessary peril to life or limb. Such "failure to maintain" claims have been widely recognized as meritorious.[3] However, those claims are entirely different from claims that a railroad is liable for failing to *install additional* safety devices which the Secretary of Transportation has not seen fit to require. *Marshall,* 720 F.2d at 1152. Such "failure to install" claims have been rejected. *Id.; Mosco,* 817 F.2d at 1091–92; *Mahutga v. Minneapolis, St. P. & S.S.M.Ry.,* 182 Minn. 362, 234 N.W. 474, *cert. denied,* 283 U.S. 847, 51 S.Ct. 494, 75 L.Ed. 1456 (1931), *cited with approval in Atchison, T. & S.F.Ry. v. Scarlett,* 300 U.S. 471, 474, 57 S.Ct. 541, 543, 81 L.Ed. 748 (1937); *cf. Herold v. Burlington N., Inc.,* 761 F.2d 1241, 1245 (8th Cir.), *cert. denied,* 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985).

We agree with the conclusion reached by the district court in granting summary judgment for SP on the BIA claim. The arguments of King are essentially that the failure to provide armrests on the locomo-

---

**2.** The BIA, as amended by an Act of March 15, 1915, ch. 169, 38 Stat. 1192, granted the Interstate Commerce Commission the power to regulate "all parts and appurtenances" of locomotives. That power was transferred to the Secretary of Transportation in 1966 by the Department of Transportation Act, 49 U.S.C. §§ 1651–1659 at 1655(e)(1)(E)(1976). *See generally, Marshall v. Burlington N., Inc.,* 720 F.2d 1149, 1192 (9th Cir.1983). The regulations are the Federal Locomotive Safety Standards, 49 C.F.R. § 229.1 (1980) *et seq.,* issued under the BIA.

The Supreme Court has held, on Commerce Clause grounds, that federal regulation of locomotives under the BIA occupies the field. *Napier v. Atlantic Coast L.R.R.,* 272 U.S. 605, 610–13, 47 S.Ct. 207, 208–10, 71 L.Ed. 432 (1926). States are thus preempted and may not prescribe requirements for locomotives, no matter how commendable or however different their purpose. *Id.*

**3.** These claims generally occur when a railroad has allowed a locomotive, or its parts or appurtenances to deteriorate so that the locomotive cannot be operated safely, *e.g., Whelan v. Penn Cent. Co.,* 503 F.2d 886 (2d Cir.1974) (rear step loose and in disrepair); *St. L.S.W. Ry. v. Williams,* 397 F.2d 147 (5th Cir.1968) (oil on locomotive steps); *Bolan v. Lehigh Valley R.R.,* 167 F.2d 934 (2d Cir.1948) (pilot step worn and bent); *Fredericks v. Erie R.R.,* 36 F.2d 716 (2d Cir.1929) (drain cock, although properly locat-

ed, was unsafe because it could be pulled loose), or when a railroad has allowed foreign substances to accumulate on locomotive surfaces or walkways, *e.g., Lilly v. Grand Trunk W.R.R.,* 317 U.S. 481, 485–89, 63 S.Ct. 347, 350–53, 87 L.Ed. 411 (1943) (failure to keep ice off locomotive tender surfaces violated express I.C.C. regulation to keep surfaces clean); *Whelan v. Penn Cent. Co.,* 503 F.2d 886 (2d Cir.1974) (rear step coated with ice); *Gowins v. Pennsylvania R.R.,* 299 F.2d 431 (6th Cir.1962) (oil on locomotive walkways); *Calabritto v. New York, N.H. & H.R.R.,* 287 F.2d 394 (2d Cir.) (sand and oil on locomotive platform), *cert. denied,* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961), or when a railroad has installed or placed items in a dangerous location on a locomotive, *e.g., Chicago, R.I. & P.R.R. v. Speth,* 404 F.2d 291 (8th Cir. 1968) (explosive torpedoes improperly placed on rack inside cab); *Heiselmoyer v. Pennsylvania R.R.,* 243 F.2d 773 (3d Cir.) (engineer's seat and brake valve were installed too closely to each other so that they came into contact), *cert. denied,* 355 U.S. 833, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957); *Delevie v. Reading Co.,* 176 F.2d 496 (3d Cir.1949) (gear mechanism installed above footboard so as to make access to cab unsafe); *Louisville & N.R.R. v. Botts,* 173 F.2d 164 (8th Cir.1949) (bolt heads protruding from locomotive footboard).

tive seat was actionable because of the broad language[4] and humanitarian purposes of the BIA; that recovery under the Act is not limited to cases of violations of specific safety standards or failure to have specified parts or attachments; that King had a valid claim under the general provision also requiring, beyond the minimal BIA requirements, that a locomotive and all its parts and appurtenances be in proper condition and safe to operate; and that SP's uniform policy of equipping its locomotives with armrests and its agreement with the union to do so made armrests an appurtenance of SP's locomotives and rendered SP liable for using a locomotive without armrests. Appellant's Opening Brief 8, 12–13; Appellant's Reply Brief 1. The arguments do not convince us that the district court's ruling was in error.

The BIA has been liberally construed by the courts, being a remedial statute. *Garcia v. Burlington N.R.R.*, 818 F.2d 713, 715 (10th Cir.1987). Nevertheless, it is whatever "in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of [the Secretary]" that is within the statute's reach. *Lunsford*, 297 U.S. at 402, 56 S.Ct. at 506; *Mosco*, 817 F.2d at 1088, 1091. There is no claim that SP's failure to attach armrests here violated a specific regulation. As the district judge pointed out, the Secretary's regulations addressed the cab seats, requiring only that "cab seats shall be securely mounted and braced." 49 C.F.R. § 229.119 (Oct. 1, 1980). Thus only if the armrests omitted here were an integral or essential part of a completed locomotive would King have a viable BIA claim. *Mosco*, 817 F.2d at 1091.

We are not persuaded that the armrests were such an integral or essential part of the locomotive. *See Lunsford*, 297 U.S. at

402, 56 S.Ct. at 506; *Mosco*, 817 F.2d at 1091. There is no showing of such character of the armrests, and when the cab chairs were considered in the regulations, armrests were not addressed at all. Nor do we think that the uniform installation of them on other SP locomotives or the railroad's agreement to do so makes them such an integral appliance so as to come within the statute. *See Lunsford*, 297 U.S. at 402, 56 S.Ct. at 506. The cases that hold the railroad liable for failing to maintain or keep in place a device already placed on the locomotive are distinguishable. *See, e.g., Herold v. Burlington N., Inc.*, 761 F.2d 1241, 1246–47 (8th Cir.), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). King's case is strengthened by SP's uniform installation of armrests on other locomotives and the agreement to install them. Nevertheless we do not think King's claim under the BIA is viable, the armrest not being an integral or essential part of a completed locomotive.

In sum, we hold that the summary judgment for SP on the BIA claim was not in error.

### B.

### *The Safety Appliance Act Claim*

■ King's remaining claim of error concerns the Safety Appliance Act and his claim arising from the January 1, 1984, accident when King was working as rear brakeman in the caboose of an SP train.

In essence this claim of error is that the district court erred in denying King's motion for a directed verdict on his SAA claim which was made at the close of the evidence. He says that the evidence was uncontradicted and undisputed that the cause of the sudden emergency stop of the train in 1984 was a "dynamiter," a car with a

---

**4.** Section 2 of the BIA (45 U.S.C. § 23) provides:
It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to

life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

defective brake condition; that as a result King was thrown into the wall of the caboose in which he was riding; and that he received painful and substantial injuries from this accident. There was no evidence, he says, which would justify a verdict against him on this SAA claim and he was therefore entitled to a directed verdict on it. King therefore requests a new trial on this claim.

Like the BIA, the SAA is considered an amendment to the FELA. *Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949); *see Metcalfe v. Atchison, T. & S.F.Ry.,* 491 F.2d 892, 895 (10th Cir.1974). Liability of the railroad under the SAA for injuries inflicted as a result of the Act's violation follows from unlawful use of prohibited defective equipment. *Coray v. Southern Pac. Co.,* 335 U.S. 520, 522–23, 69 S.Ct. 275, 276–77, 93 L.Ed. 208 (1949). King was therefore entitled to recover under the SAA if "the undisputed evidence established that the train suddenly stopped because of defective air-brake appliances ... if this defective equipment was the sole or a contributory proximate cause of the [injuries]." *Id.* at 523, 69 S.Ct. at 277.

■ For a new trial to be ordered as King requests, he must demonstrate that "the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Black v. Hieb's Enter's.,* 805 F.2d 360, 363 (10th Cir.1986).[5] Here there was testimony that would support an inference that King's injuries did not result from the 1984 emergency stop. For example, Dr. Adler, an orthopedic surgeon called by SP, testified that King's medical records were "consistent with the concept that Mr. King has had long-standing, gradually worsening back complaints that are associated with the general activities and life style rather than there being dramatic change in relationship with any one of the specific

injuries that he's had in the past." VI R. 587; *see* VII R. 609–610.

Dr. Adler did state as to King's neck problem that "his condition was clearly made worse after the accident on July 27, 1980 ..." VII R. 604. With respect to King's lower back and neck conditions, following the Doctor's March 1984 examination the Doctor felt that King had a spondylolysis condition in the lower back and disc degeneration at one level of his neck; the Doctor also said King had a spinal stenosis or narrowing of nerve spaces in the spinal canal. *Id.* at 603. He said whether it was from a fall on the floor of the caboose cab or in the engine, or picking up a toy off the floor, a reaction is set up; but "these things can occur in relationship to his non-work activities as well as his work activities." VII R. 604. Moreover, King admitted there had been other occasions when he got "knocked about in a caboose or something," VII R. 782–83, and that he saw chiropractors numerous times for several years before the 1980 accident. *Id.* at 784–85.

We cannot say the verdict for SP on the SAA 1984 claim is clearly, decidedly or overwhelmingly against the weight of the evidence. While King points to substantial evidence in his favor, it must be remembered that King bore the burden of proof regarding causation, and the jury was entitled to judge the weight of his evidence. *See* 9 J. Wigmore, Evidence § 2495 (Chadbourne rev. 1981) (p. 394–95); 9 C. Wright & A. Miller, Federal Practice & Procedure §§ 2527, 2535 (1971). Under the standard that applies we are not convinced that we should reverse the judgment and order a new trial.

## IV

The summary judgment in favor of SP regarding King's BIA claim and the judg-

---

5. There are lengthy procedural arguments made by both sides as to whether the claim of error respecting the SAA claim is preserved for this appeal by the motion made by King below, and as to the standard of review on the issue. We need not go into all these matters. In his open-

ing and reply briefs all King seeks on this SAA claim arising from the 1984 accident is a new trial. Viewing the record under the standard most favorable to King in arguing for a new trial, we nevertheless hold that King has not made a proper showing.

ment entered on the jury's verdict regarding King's SAA claim are accordingly AFFIRMED.