Robert A. VAILLANCOURT, Plaintiff,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, Defendant.

No. 90 C 0823.

United States District Court, N.D. Illinois, E.D.

May 29, 1992.

Robert Earl Harrington, Jr., Patrick Joseph Harrington, Harrington & Harrington, Chicago, Ill., for plaintiff.

Gary W. Fresen, Thomas F. Tobin, Baker & McKenzie, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court are the plaintiff's motion to enter judgment on the jury verdict and the defendant's motions for judgment notwithstanding the verdict, for a mistrial, and for a new trial. For reasons that follow, the plaintiff's motion is granted and all of the defendant's motions are denied.

## FACTS

The plaintiff, Robert A. Vaillancourt ("Vaillancourt"), an engineer with the defendant Illinois Central Railroad Company ("IC"), tripped over an ice chest in an IC locomotive on the night of August 13, 1988. As a result, Vaillancourt allegedly suffered a shoulder injury which required surgery to correct, as well as injuries to his back, neck and an arm. Vaillancourt filed the instant lawsuit against the IC on February 13, 1990, alleging negligence under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 ("FELA"), and violations of the

Boiler Inspection Act (among the Safety Appliance Acts, 45 U.S.C. § 22 *et seq.*). Following a trial, the jury returned a $198,226 verdict for Vaillancourt on October 30, 1991.

The facts at trial, cast in a light favorable to the plaintiff, showed the following:

1. On the night of the accident, Vaillancourt was assigned to work as the engineer on a freight train originating from the IC's Markham Yard in Homewood, Illinois. The lead locomotive, No. 3009, contained an ice chest approximately two feet high, three feet long and two feet wide, bolted to the floor near the fireman's and brakeman's seats. There was a clearance of about a foot and a half between the seats and the cooler.

2. Around 8:30 p.m., while there was still some daylight, Vaillancourt arrived at the train yard, placed his suitcase in the yard office, and proceeded to the four-engine "consist" of locomotives to which he was assigned. After checking the oil and other fluids in the locomotives, Vaillancourt entered the lead engine, No. 3009, through the rear door on the engineer's side. He then drove the consist over to the yard office, and exited No. 3009, leaving his flashlight inside.

3. The temperature was around 90 degrees. The windows in the non-air conditioned lead engine were left open. The interior light in the engine, which had not been turned on, was left off in order to avoid attracting bugs.

4. Around 10:00 or 10:30 p.m., when it was completely dark outside, Vaillancourt received clearance to take the consist and hook it up to the rest of the train. Carrying his suitcase in his right hand, Vaillancourt climbed up on the engine and walked along the front to the side door on the brakeman's side. He then opened the door with his left hand. Lifting his suitcase over the brakeman's and fireman's seats, Vaillancourt stepped around the seats in order to reach the interior light switch. Before reaching the switch, he tripped over the ice chest, suffering various injuries.

5. When Vaillancourt first entered engine 3009 that evening, following the fluids check, he had no occasion to walk across the crew's compartment to the brakeman's side. He was unaware of the location and size of the ice chest prior to tripping over it. IC engines contain ice chests to hold beverages for the crew. Those chests, however, vary in size and are not always placed in the same location on engines of the same type as No. 3009. Some ice chests, for example, are placed at waist level on metal supports.

6. Vaillancourt, age 36 at the time of the accident, has been an IC employee since 1970 and an engineer since 1978. Prior to that night, he had never been in the crew compartment of engine 3009. That engine had been part of the consist on at least one freight train he had driven earlier, but not as the lead engine.

The verdict form which the jurors signed contained nine interrogatories. The jury answered "yes" to the first seven interrogatories, which asked (1) whether the IC violated the Boiler Inspection Section of the Safety Appliance Act, (2) whether that violation caused "in whole or in part" Vaillancourt's injuries, (3) whether the IC violated a federal regulation (codified at 49 C.F.R. § 229.119(c)) requiring that floors of locomotives be kept free of "any obstruction that creates a slipping, tripping or fire hazard," (4) whether that violation was a contributing cause of Vaillancourt's injuries, (5) whether the IC was negligent, (6) whether that negligence contributed to Vaillancourt's injuries, and (7) whether Vaillancourt was negligent. The eighth interrogatory asked the extent of Vaillancourt's negligence, which the jury assessed as 5%. The ninth interrogatory, which asked for the amount necessary to compensate Vaillancourt without any reduction for his contributory negligence, was answered "100% $198,226.00."

When the jury first returned its verdict, the ninth interrogatory was answered "100%." This court then told the jurors that they had answered that interrogatory improperly and asked them to re-read the instructions and resume their deliberations. Shortly thereafter, the jury submitted a written question asking for the total

amount of damages requested by plaintiff's counsel in his closing argument. Both parties' counsel were consulted in chambers regarding an appropriate response. The IC's counsel urged the court not to answer the jury's question at all, and refused to suggest or consider possible answers. This court suggested submitting a transcript of the relevant portion of the closing arguments, and the IC rejected that alternative. Over the IC's objection, the court wrote to the jury that Vaillancourt's counsel requested a total of $198,226.00. About 20 minutes later, the jury returned its verdict with "$198,226.00" added to its answer to interrogatory No. 9.

The IC immediately moved for a mistrial. The IC supplemented that motion with a written mistrial motion, along with motions for judgment notwithstanding the verdict ("JNOV") and for a new trial, on December 10, 1991. Meanwhile, Vaillancourt filed the instant motion for judgment on the verdict on November 15, 1991.

## DISCUSSION

 Whether to grant or deny a motion for a mistrial is within the trial court's broad discretion. *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1369 (7th Cir.1990). A motion for a new trial should be granted if "the verdict is against the weight of the evidence ... the damages are excessive, or ... for other reasons, the trial was not fair to the moving party." *E.E.O.C. v. Century Broadcasting Corp.*, 957 F.2d 1446, 1460 (7th Cir.1992) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940)). A new trial motion is also committed to the district court's discretion. *Id.* In deciding whether to grant a JNOV motion, the court must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Bogan v. Stroud*, 958 F.2d 180, 184 (7th Cir.1992) (quoting *Cygnar v. City of Chicago*, 865 F.2d 827, 834 (7th Cir.1989)).

The IC's three motions essentially boil down to two issues: (1) whether the IC was unfairly prejudiced by the court's answer to the jury's question (argued in both the IC's motions for a mistrial and for a new trial), and (2) whether Vaillancourt presented sufficient evidence to establish negligence under the FELA on the IC's part or to establish that the IC violated the Boiler Inspection Act of the Safety Appliance Acts (argued in both the IC's motions for JNOV and for a new trial).

 Dealing first with the jury-question issue, the court finds that the IC suffered no unfair prejudice. The jury asked a specific question—what total amount of damages did Vaillancourt's attorney request in closing arguments?—which the court answered specifically, "$198,226.00," and without comment. The jurors' initial answer to the ninth interrogatory, "100%," indicated that they already decided to accept Vaillancourt's damages figure, but did not recall what that specific figure was. The jury was entitled to an answer, or to receive materials in which it could find the answer, such as a transcript of Vaillancourt's attorney's closing argument. Simply providing the $198,226.00 figure was a convenient alternative. Moreover, the IC's refusal to suggest any possible answer, or to request any form of clarifying or cautionary instruction, substantially undermines its position. *See DeRance, Inc. v. PaineWebber, Inc.*, 872 F.2d 1312, 1326 (7th Cir.1989) (failure to request curative instruction, along with failure to specify specific grounds for seeking mistrial, constitutes waiver of issue on appeal). Therefore, the IC's mistrial motion and its new trial motion, to the extent based on the answer to the jury's question, are denied.

 Moving on to the sufficiency of the evidence, the court finds that the record adequately supports the jury's verdict. The FELA "is a broad remedial statute, and has adopted a 'standard of liberal construction in order to accomplish [Congress's] objects.'" *Atchison T. & S.F. Ry. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987) (quoting *Urie v. Thompson*, 337 U.S. 163, 180, 69

738

S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949)). "It is well established that the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action." *Harbin v. Burlington N.R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990). The test of a jury verdict under the FELA "is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury...." *Id.* (emphasis in original) (quoting *Rogers v. Missouri P.R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)). Evidence of any negligence on the IC's part in the placement of the ice chest in engine No. 3009, or in failing to prevent any resulting danger, might therefore warrant imposing FELA liability on the IC.

 Additionally, employees injured as a result of violations of the Boiler Inspection Act, 45 U.S.C. § 23—one of the Safety Appliance Acts, 45 U.S.C. §§ 1 *et seq.*—may sue under the FELA. *McKenna v. Washington Metro. Area Transit Auth.*, 829 F.2d 186, 188 (D.C.Cir.1987); *Illinois C.G.R.R. Co. v. International Paper Co.*, 824 F.2d 403, 405 (5th Cir.1987). Strict liability under the FELA follows if a Safety Appliance Act violation is proven. *Illinois C.G.R.R.*, 824 F.2d at 405. The Safety Appliance Act in turn encompasses safety regulations promulgated by the Federal Railroad Administration. 45 U.S.C. §§ 421–44 (Interstate Commerce Commission's safety rule-making authority transferred to Railroad Administration in 1966); *Lilly v. Grand Trunk W.R.R. Co.*, 317 U.S. 481, 486, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943) (ICC authorized by Boiler Inspection Act to set regulations by which violations of the Act will be determined). Among the applicable regulations is 49 C.F.R. § 229.-119(c), which provides:

> Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing.

Therefore, any obstruction of a passageway in engine No. 3009 that creates a

tripping hazard could violate § 229.119(c) and the Boiler Inspection Act, which in turn could be a basis for imposing strict FELA liability.

The location of the ice chest in No. 3009 on the floor, in an area through which crew members were likely to pass, could reasonably be seen as a tripping hazard. Furthermore, that placement, when other configurations were available, such as placing the ice chest at waist level on supports, combined with the lack of readily accessible lighting, could establish negligence to a sufficient degree to satisfy the very lenient FELA standard. Accordingly, the court finds that sufficient evidence was before the jury from which it could reasonably find violations of the FELA and the Boiler Inspection Act.

 The IC has not argued that the total damages the jury awarded are excessive, and the court finds that those damages are not "monstrously excessive" and do not lack a rational connection to the evidence. *See Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256–57 (7th Cir.1990).

In sum, the IC has failed to show that the trial was unfair so as to warrant the declaration of a mistrial or the granting of a new trial, and the IC has also failed to show that the evidence before the jury was inadequate to support liability under either the FELA directly, or of the Boiler Inspection Act through the FELA. The evidence was sufficient to support the jury's verdict, and Vaillancourt is therefore entitled to judgment on that verdict.

## CONCLUSION

For the above reasons, the IC's motions for a mistrial, for a new trial and for JNOV are all denied, and Vaillancourt's motion for judgment on the verdict is granted.

IT IS SO ORDERED.