**Michael P. McGINN, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.**

No. 92 C 7368.

United States District Court,
N.D. Illinois, E.D.

April 14, 1994.

---

828

Don C. Aldrich, Yaeger, Jungbauer, Barczak & Roe, Ltd., Minneapolis, MN, for plaintiff.

Kenneth John Wysoglad, Kenneth J. Wysoglad & Associates, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Michael McGinn ("McGinn") works for Burlington Northern Railroad ("the Railroad"). One evening while traveling in an engine cab with four other crew members of the Railroad, McGinn got up to use the restroom and fell. McGinn now moves this Court for summary judgment claiming that he tripped and fell while working and that his injuries clearly fall within the "tripping hazard" regulation encompassed within the Federal Boiler Inspection Act, 45 U.S.C. § 23 ("the BIA") which would make the Railroad strictly liable for his injuries. However, McGinn did not trip over spilt oil or grease, or even loose train parts or tools—instead he tripped over his own luggage grip. This case therefore presents us with one question: can the Railroad be held strictly liable for an employee's injuries under the Boiler Inspection Act when those injuries resulted from the employee's placement of his personal belongings on the floor of the engine cab? We think not, and therefore deny Plaintiff's motion for summary judgment.

### DISCUSSION

The Federal Boiler Inspection Act requires a railroad to maintain its locomotive engine, its parts and "appurtenances, in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb...." 45 U.S.C. § 23. The Boiler Inspection Act also encompasses safety regulations promulgated by the Federal Railroad Administration. 45 U.S.C. 421–44; *Lilly v. Grand T.W.R. Co.*, 317 U.S. 481, 486, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943). If an employee is injured as a result of a violation of the Boiler Inspection Act, he may sue under the Federal Employer's Liability Act. 45 U.S.C. §§ 51–60 ("FELA"); *Illinois C.G.R. Co. v. International Paper Co.*, 824 F.2d 403, 405 (5th Cir.1987); *Vaillancourt v. Illinois C.R. Co.*, 791 F.Supp. 734, 738 (N.D.Ill.1992).

The Boiler Inspection Act and FELA, however, impose different types of

liability. FELA claims are based on the railroad's negligence. 45 U.S.C. § 51; *Rogers v. Missouri P.R. Co.*, 352 U.S. 500, 508–09, 77 S.Ct. 443, 449–50, 1 L.Ed.2d 493 (1957). The BIA, in contrast, imposes an absolute duty on the railroad to maintain the locomotive and all of its parts and appurtenances in proper condition and safe to operate. *Lilly*, 317 U.S. at 485, 63 S.Ct. at 350–51. The difference, as the Tenth Circuit states, is that "FELA allows recovery in a broad range of situations, while liability under the BIA only occurs under narrow circumstances." *King v. Southern Pacific Transportation Co.*, 855 F.2d 1485, 1489 (10th Cir.1988). Because the BIA is a remedial statute, it has been broadly construed. *Garcia v. Burlington N.R. Co.*, 818 F.2d 713, 715 (10th Cir.1987).

One of the applicable regulations which is encompassed by the BIA is 49 C.F.R. § 229.-119(c), and reads in relevant part:

> Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing.

Plaintiff reads this regulation as applying to the facts in this case in that he claims any tripping hazard could violate 229.119(c) and the BIA, which would then be a basis for imposing strict FELA liability. McGinn delineates the facts that occurred on the evening of his accident and both parties agree that there is no dispute that McGinn, in fact, tripped over his own luggage grip as he was heading for the restroom. McGinn seeks to have this Court grant his motion for summary judgment which states that the Railroad is strictly liable for his injuries because his luggage grip constitutes a tripping hazard.

The distinction between the different types of liability under the BIA and FELA is integral to this Court's analysis particularly because courts have interpreted violations of the BIA to suggest that the locomotive in which an injury occurred was not safe to operate due to the absence of "an integral or essential part of a completed locomotive." Therefore, one interpretation of McGinn's fall

and injury is that the Railroad's failure to provide an adequate luggage rack or safe area within which grips can be stored has created an unsafe condition in the engine cab which violates the BIA.

The Fourth Circuit addressed a similar situation in the case of *Mosco v. Baltimore and O. Railroad*, 817 F.2d 1088 (4th Cir. 1987). In *Mosco*, the plaintiff was injured when a rock, or similar object, came through the open window of the locomotive that plaintiff was operating and struck him in the head. Mosco alleged that the railroad violated the BIA because although the windows were constructed of shatter-proof material, they were not equipped with any protective screens or bars. *Id.* The Fourth Circuit noted that a carrier can violate the BIA by either failing to comply with the regulations promulgated by the Federal Railroad Administration or by failing to keep all parts and appurtenances of the locomotive in proper condition and safe to operate. *Id.* at 1090.

However, the court limited the liability of the railroad by stating that "a carrier cannot be held liable under the Boiler Inspection Act for failure to install equipment on a locomotive unless the omitted equipment 1) is required by applicable federal regulations; or 2) constitutes an integral or essential part of a completed locomotive." *Id.* After noting that bars and screens are not required by applicable federal regulations, the court next determined that the omitted protective devices were not an essential or integral part of the locomotive. *Id.* If we view McGinn's claim as one which states that the locomotive was unsafe to operate because there were no luggage racks within which McGinn could store his luggage grip, this claim would fail. Although the BIA has been liberally construed because of it remedial nature, *Garcia*, 818 F.2d at 715 (10th Cir. 1987), the Court finds it difficult to extend the reach of the BIA to cover the storage of personal belongings placed under seats by employees as integral and essential parts of the locomotive. In fact, we find that a ruling which would find that luggage racks are essential appurtenances necessary for the safe operation of the engine would be supplanting the role of the Federal Railroad Administra-

tion. *See, e.g., Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936).

The second possible way for McGinn to recover for his injuries is to assert that his fall resulted from a violation of the BIA in that one of the regulations, as delineated above, requires the Railroad to keep the floor of the engine free from tripping hazards. In essence, McGinn is arguing that because he fell over his own luggage grip, we should hold the Railroad liable for not keeping the floor clear of his luggage grip. Regardless of the fact that McGinn himself placed the grip under the seat, regardless of the fact that McGinn carried the grip on board the locomotive, regardless of the fact that the grip contained his personal belongings which he personally stowed away, McGinn asserts that the Railroad is strictly liable because his luggage grip created a hazard covered under the regulations. As such, a violation of the regulations has occurred, McGinn asserts, creating strict liability under the BIA.

The Court finds McGinn's argument both interesting and creative. If it is true that the brakemen and engineers of these locomotives are required to remain on board the locomotive for a period of longer than a day, and if they must carry their personal belongings with them in some type of luggage, isn't it possible that the grip becomes an essential part of the brakeman's job? Certainly, the Railroad wouldn't expect the brakemen and engineers to take two or three day trips without grips. Therefore, there is some allure to the argument that the luggage grip becomes an inherent characteristic of the job. At the very least, the luggage grip is a useful accommodation which allows the brakemen to carry out their jobs efficiently and comfortably. At the most, the grip becomes an indispensable tool that the brakemen need to fulfill their duties.[1] But the question under the BIA is not whether the grip is an essential part of the brakemen's job, but whether it is an essential part of the locomotive. In the alternative, the question is whether the brakeman's habit of placing his luggage under his seat constitutes a tripping hazard which could in turn hold the railroad liable for any resulting injuries.

We do not find, however, that we need to define the role of the grip in the brakeman's job position with complete exactitude in order to determine whether it falls within the regulations and thus results in a finding of strict liability for the Railroad. Instead, we look to the evolution of the BIA and how claims under that Act have been construed in the past. As the Tenth Circuit has noted, these claims generally occur when the Railroad has allowed a locomotive, or its parts or appurtenances to deteriorate so that the locomotive cannot be operated safely or when a railroad has allowed foreign substances to accumulate on locomotive surfaces or walkways. *King,* 855 F.2d at 1489, n. 3. *St. Louis S. Ry. Co. v. Williams,* 397 F.2d 147 (5th Cir.1968) (injury from oil spillage on steps); *Lilly v. Grand T.W.R. Co.,* 317 U.S. 481, 485–89, 63 S.Ct. 347, 350–53, 87 L.Ed. 411 (1943) (injury from ice build-up on tender surface); *Calabritto v. New York, N.H. & H.R. Co.,* 287 F.2d 394 (2d Cir.1961) (injury from mixture of sand and oil on platform); *Louisville & N.R. Co. v. Botts,* 173 F.2d 164 (8th Cir.1949) (injury from bolt heads protruding from floor boards).

McGinn cites to *Vaillancourt v. Illinois C.R. Co.,* 791 F.Supp. 734 (N.D.Ill.1992) to support his assertion that the Railroad should be held strictly liable in this situation. In *Vaillancourt,* Judge Norgle addressed the same regulation we have before us in this matter, § 229.119(c), in the context of whether an ice chest located on the floor of an engine created a tripping hazard such that a violation of both FELA and the BIA could be found. In that case, Judge Norgle stated:

> The location of the ice chest in No. 3009 [the engine] on the floor, in an area through which crew members were likely to pass, could reasonably be seen as a tripping hazard. Furthermore, the placement, when other configurations were available, such as placing the ice chest at waist level on supports, combined with the

---

**1.** Some testimony before us suggests that the grip may contain the brakemen's manual of regulations, "the Bible", and even the necessary accessories for the engineer's position if the brakeman is called upon to assume that role.

lack of readily accessible lighting, could establish negligence to a sufficient degree to satisfy the very lenient FELA standard. Accordingly, the court finds that sufficient evidence was before the jury from which it could reasonably find violations of the FELA and the Boiler Inspection Act. *Id.* at 738. Although we find *Vaillancourt* persuasive authority, we also note that it is factually distinguishable from the matter before us.

Specifically, and significantly, the ice chest in *Vaillancourt* was bolted to the floor of the engine. It was placed there by the railroad for use by the railroad employees. When one of the railroad's employees subsequently trips over that ice chest and injuries himself, it makes sense that the BIA is called into play. By both choosing to bolt the ice chest to the floor and choosing the permanent spot in which the ice chest would be bolted, the ice chest became a part and appurtenance of the engine for which the railroad was responsible. When one of its employees is injured as a result of this unsafe placement, the BIA reasonably is called into play.

In contrast, McGinn tripped over his own personal belongings, items he placed in the exact spot in which he tripped. These belongings which were carried on board by McGinn himself do not have the same permanence and indispensability that parts and appurtenances of a locomotive have. Further, they do not fall within the accepted interpretation of what constitutes a tripping hazard under the BIA. That interpretation has placed a duty on the railroad to maintain a safe working place by placing strict liability on the railroad for failure to keep floors clear of oil, grease, snow, ice, and to keep the floors free from such unsafe conditions such as broken flooring or loose bolts.

■ Recently, the Fourth Circuit addressed a situation in which the plaintiff was injured when he slipped and fell on a loose metal object which was on the floor of the cab.[2] *Topping v. CSX Transportation, Inc.,* 1 F.3d 260 (4th Cir.1993). In that case, the defendant CSX urged the court to find that the plaintiff's injury did not arise out of a violation of the Act because the plaintiff slipped on an object which was not a part of the train. The Fourth Circuit held: "It seems to us a classic jury question whether the presence of the loose metal object rendered the locomotive cab "unsafe to operate. We see no basis for reading CSX's limitation into the act." *Id.* at 261. However, the Fourth Circuit cautioned:

> Our holding does not imply that railroad employees may bring loose items on board with impunity. A worker who slips on an item that he brought with him—a candy wrapper—or a banana peel—may well be responsible for his accident. We need not settle such a question in this case. CSX did not establish that Topping brought on board the metal object on which he slipped.

*Id.* Of course, McGinn's grip is more essential to him on a two day trip than a banana or a piece of candy. But the fact remains that McGinn brought the grip on board, placed the grip in its precarious position himself, and fell over his own belongings. In light of the Fourth Circuit's warning and this Court's belief that luggage grips are not encompassed within the meaning of the BIA's tripping hazards, we do not find that the Railroad is strictly liable for McGinn's injury.

We therefore deny Plaintiff's motion for summary judgment as to the question of strict liability and grant Defendant's motion for summary judgment in that we find that tripping over one's personal luggage grip does not constitute a tripping hazard as defined in the regulations that are encompassed within the BIA. We allow Plaintiff to file a new Complaint within 30 days to allege an appropriate FELA claim if such a claim exists.

### CONCLUSION

We deny Plaintiff's motion for summary judgment. We grant Defendant's motion for summary judgment. Any amended com-

---

**2.** Interestingly, the object is never defined further in the case. This Court believes the description could be critical. For example, a metal object such as a tool necessary to repair equipment in the cab would seem to fall within the rubric of the BIA. However, an employee's golf club brought on board the engine would certainly fall beyond the scope of the BIA.

plaint by Plaintiff should be filed within 30 days.